5590-42
KEF/BJV/ms/tlp

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| FARON M. DAVENPORT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.:   21-cv-02296-CSB |
| | ) |
| MARCUS PAIGE and JAMES SPENCE, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

NOW COME the Defendants, MARCUS PAIGE and JAMES SPENCE, by Heyl, Royster, Voelker & Allen, their attorneys, and for their Motion for Summary Judgment and Memorandum of Law in Support Thereof, state:

### I.    INTRODUCTION

In this Section 1983/Eighth Amendment action, the Court permitted Plaintiff to proceed on a conditions-of-confinement claim. (Doc. #13, p.3, ¶1). The alleged "condition" concerned Plaintiff's transport by Officers Page and Spence to the Illinois Department of Correction's Stateville facility. (*Id.* p.2). During this transport, Plaintiff alleged he was placed in a van without seatbelts and that Officer Spence was distracted while driving, resulting in Spence slamming on the brakes to avoid crashing into another vehicle. (*Id.*). Plaintiff alleges that Spence's hard braking caused Plaintiff to be thrown into the back of the van, causing injury. (*Id.*). Finally, Plaintiff alleges neither Spence nor Page (who was also in the van, but not driving) reported the incident to the officials at Stateville or to anyone at the Champaign County Jail. (*Id.*).

The record shows Plaintiff was secured in the transport van, transported without incident, and suffered no injuries. Summary judgment is warranted.

## II.  UNDISPUTED MATERIAL FACTS

### A. Parties

1. Plaintiff Faron Davenport, at the time of the subject incident, was a convict who was being transferred from the Champaign County Jail to the Illinois Department of Correction's (IDOC's) Stateville facility. (Ex. 1, Amended Judgment of May 20, 2021, Bates no. 268); (Ex. 2, Decl. of J. Spence, ¶2).

2. James Spence was, at the time relevant to Plaintiff's Complaint, a correctional officer employed by the Champaign County Sheriff's Office. (Ex. 2, Decl. of J. Spence, ¶1).

3. Marcus Paige was, at the time relevant to Plaintiff's Complaint, a correctional officer employed by the Champaign County Sheriff's Office. (Ex. 3, Decl. of M. Paige, ¶1).

### B. The Champaign County Sheriff's Office's transport van, generally

4. When transporting inmates, the Sheriff's Office requires the use of vans specifically designed for transporting inmates. (Ex. 2, Decl. of J. Spence, ¶3).

5. Neither Spence nor Paige has any role in determining the design or capabilities of these transport vans. (Ex. 2, Decl. of J. Spence, ¶3); (Ex. 3, Decl. of M. Paige, ¶10).

6. The transport van used during the subject incident has four interior compartments: the driver's cabin, where the driver and passenger sit; the "North" compartment, which is immediately behind the driver's cabin and separated from the cabin by a metal partition; the West/driver's-side compartment, which is immediately behind the North compartment and separated from the North by a metal partition; and the East/passenger-side compartment, which is also immediately behind the North compartment and opposite the West compartment, and separated from both by a metal partition. (Ex. 3, Decl. of M. Paige, ¶¶ 9); (Ex. 4, Photos, Bates nos. 1–12).

For demonstrative purposes only, the below diagram — although not to scale — shows the layout of the van's interior:

*Front of Van*

| Driver's Cabin ||
|---|---|
| North Comp't ||
| West Comp't | East Comp't |

*Back of Van*

7.  During the transport in question, Mr. Davenport was secured within the East/passenger-side compartment of the transport van. (Ex. 2, Decl. of J. Spence, ¶9).

8.  During transport, the interior light is "on" for each occupied compartment of the transport van. (Ex. 3, Decl. of M. Paige, ¶7)

9.  There is a tinted/reflective window between the driver's cabin and the North compartment, and between the North compartment and the East/West compartments. (Ex. 3, Decl. of M. Paige, ¶9); (Ex. 2, Decl. of J. Spence, ¶6).

10. These windows are, by design, difficult for inmates — particularly those in the East or West compartments — to see through from within a compartment, as the windows have a reflective tint on them that makes them akin to a one-way mirror, and they also darken when the interior light of a given compartment is on. (Ex. 2, Decl. of J. Spence, ¶6); (Ex. 3, Decl. of M. Paige, ¶9). *See also* (Ex. 4, Photos, at Bates nos. 1–4, 7–8).

11. For seating, the East/West compartments both have inward-facing metal benches that run the length of the side of the compartment. (Ex. 3, Decl. of M. Paige, ¶9); (Ex. 4, Photos, Bates nos. 8–9).

12. The bench in the East/West compartments has slip-resistant tape running the length of the bench. (Ex. 2, Decl. of J. Spence, ¶5); (Ex. 3, Decl. of M. Paige, ¶11).

13. The bench in the East/West compartments also has a blue fabric belt that is bolted to the wall behind the bench in taut loops, such that inmates may grab these loops for support during transport. (Ex. 2, Decl. of J. Spence, ¶5); (Ex. 3, Decl. of M. Paige, ¶11); (Ex. 4, Photo, Bates no. 9–10).

14. Finally, the East/West compartments are outfitted with a padded black bar on the wall opposite each compartment's bench. This black bar is meant to be extended from the wall and such that it secures an inmate's torso to the bench, akin to the bars used to secure someone to a roller coaster. (Ex. 2, Decl. of J. Spence, ¶5); (Ex. 3, Decl. of M. Paige, ¶9); (Ex. 4, Photo, Bates no. 9–10).

15. If a correctional officer neglected to deploy the padded black bar, an inmate can deploy the bar themselves during transport. (Ex. 2, Decl. of J. Spence, ¶5).

16. In Spence's and Paige's experience, the restraints in the East/West compartments of the transport van were effective at keeping inmates from sliding around and bouncing out of their seat during transport. (Ex. 2, Decl. of J. Spence, ¶5); (Ex. 3, Decl. of M. Paige, ¶11).

C. **Subject Incident: Leaving for Statesville**

17. On or about September 30, 2021, Spence and Paige were working at the Champaign County Jail as a transport officer and were tasked with transporting Plaintiff and two

other inmates to the Stateville IDOC facility. (Ex. 2, Decl. of J. Spence, ¶¶7, 9); (Ex. 3, Decl. of M. Paige, ¶5).

18. Spence drove the transport van and Paige was the passenger. (Ex. 2, Decl. of J. Spence, ¶8); (Ex. 3, Decl. of M. Paige, ¶5).

19. Mr. Davenport was placed in the East/passenger-side compartment of the van. (Ex. 2, Decl. of J. Spence, ¶9).

20. Mr. Davenport was secured in the East compartment with the padded black bar. (Ex. 3, Decl. of M. Paige, ¶13).

21. For the transport, Mr. Davenport was secured with "DOC restraints," meaning Davenport's hands were cuffed to a chain around his waist/torso and his ankles were chained together as well, but the chains in question allowed Davenport to move his feet and hands independently and to a greater extent than if his feet or wrists were cuffed together. (Ex. 3, Decl. of M. Paige, ¶6). These restraints are used so the inmate can be more comfortable for the longer drive associated with traveling to an IDOC facility. (*Id.*).

22. The van departed for Stateville sometime between 5am and 6am and would have arrived at Stateville sometime between 7:30am and 8:30am. (Ex. 2, Decl. of J. Spence, ¶8).

   **D.  Subject incident: Approaching Stateville**

23. When the van was a few minutes of driving away from its destination, Spence was driving the van in the left lane and approaching an intersection with a stop light. (Ex. 2, Decl. of J. Spence, ¶ 15).

24. Spence's goal was to turn left at the stoplight so he could turn onto the road that led to the receiving area of Stateville. (Ex. 2, Decl. of J. Spence, ¶15).

25. Traffic on the road was heavy. (Ex. 2, Decl. of J. Spence, ¶16).

26. The flow of traffic was such that Spence was not able to drive as fast as the speed limit. (Ex. 2, Decl. of J. Spence, ¶16).

27. There was a car in front of the van in the left lane. (Ex. 2, Decl. of J. Spence, ¶ 17).

28. Suddenly, this car braked, significantly slowed down, and started to turn left before the stop-lighted intersection Spence was driving toward. (Ex. 2, Decl. of J. Spence, ¶ 17). The car appeared to want to make a sharp left turn to a smaller road that led to a different portion of Stateville. (*Id.*).

29. The smaller road the car turned onto did not have a stoplight or stop sign. (Ex. 2, Decl. of J. Spence, ¶17).

30. At the time the car started to brake/turn left, Spence was looking forward, watching traffic. (Ex. 2, Decl. of J. Spence, ¶18).

31. Spence was not talking on my phone or fiddling with the radio. (Ex. 2, Decl. of J. Spence, ¶18).

32. When Spence noticed the car in front of him had started to brake/turn, he likewise applied the brakes so as to avoid hitting the car. (Ex. 2, Decl. of J. Spence, ¶ 19).

33. Spence did not slam on the brakes or come to a complete stop and does not recall even shifting forward in his seat. (Ex. 2, Decl. of J. Spence, ¶19).

34. For his part, Paige recalls the force of Spence's braking was only forceful enough to cause Paige to nod slightly forward, alerting Paige that Spence was braking. (Ex. 3, Decl. of M. Paige, ¶17).

35. Neither Spence nor Paige heard any noises from the back of the transport van which would indicate that somebody slammed into a wall or otherwise injured themselves. (Ex. 2, Decl. of J. Spence, ¶19); (Ex. 3, Decl. of M. Paige, ¶18).

36. After the car that had been in front of van had turned out of the left lane, Spence continued driving toward the desired intersection without incident. (Ex. 2, Decl. of J. Spence, ¶20).

**E. Subject incident: Pulling into Stateville, then leaving**

37. Eventually, the van arrived at the Stateville receiving area and delivered Mr. Davenport and his fellow inmates into IDOC's custody without incident. (Ex. 2, Decl. of J. Spence, ¶¶ 21–22); (Ex. 3, Decl. of M. Paige, ¶18).

38. Spence and Paige then left IDOC and returned to the Champaign County Jail. (Ex. 2, Decl. of J. Spence, ¶23).

39. Nobody from Stateville reached out to Spence, Paige, or the Sheriff's Office to ask about any alleged injuries Mr. Davenport claimed to have suffered during transport. (Ex. 2, Decl. of J. Spence, ¶24); (Ex. 3, Decl. of M. Paige, ¶18).

40. Plaintiff did not suffer any acute injuries during his transport to Stateville. (Ex. 5, Rep. of T. Fowlkes, p.13–15).

### III. LEGAL STANDARD

Summary judgment is proper when the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a),(c). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant satisfies this initial burden, the non-movant may not rest

upon the mere allegations or denials of the pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) (quotations omitted).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Id.*

## IV.   ARGUMENT

This Court permitted Plaintiff to proceed on a conditions-of-confinement claim. (Doc. #13). Because Mr. Davenport was a convict when he was being transported to Stateville, his claim is subject to the Eighth Amendment. *See, e.g.*, *Armstrong v. Squadrito*, 152 F.3d 564, 659–70 (7th Cri. 1998) (explaining which constitutional amendments apply during various stages of detention).

The Eighth Amendment protects individuals from the imposition of "cruel and unusual punishments", U.S. CONST. AMEND. XIII. The Eighth Amendment does not "require the most intelligent, progressive, humane, or efficacious prison administration." *Lee v. Young,* 533 F.3d 505, 511 (7th Cir. 2008). Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. *Pierson v. Hartley,* 391 F.3d 898, 902 (7th Cir.2004). "Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Id.*

For a conditions-of-confinement claim, "a prison official cannot be found liable * * * unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, the general standard of a cognizable Eighth Amendment claim is that 1) there is an excessive risk to inmate health or safety of Constitutional proportions; 2) the official is subjectively aware of that risk; and 3) the official consciously disregards that need or risk of harm. *Farmer,* 511 U.S. at 839–840, 114 S.Ct. 1970.

Here, the record shows Plaintiff was not subjected to a sufficiently serious risk, let alone that said risk was consciously disregarded by the Defendants.

First, the record shows Plaintiff was properly secured in the transport van. He was placed on a bench with slip-resistant tape, hand grips (akin to those available on a commuter bus), and a padded black bar (akin to those used in roller coaster carts). Plaintiff was therefore secured from the back and the front, and the tape would help prevent Plaintiff from slipping side to side. Moreover, Plaintiff was wearing "DOC restraints," meaning he had fuller movement of his hands and legs to help him grab the bar or handgrips — or generally brace himself — if he desired during transport. So far as Spence and Paige knew, therefore, Plaintiff was safely secured in the back of the transport van — there was no excessive risk to Plaintiff's safety they could have disregarded.

Second, the record shows the Defendants were driving within the law's strictures, and only braked to avoid hitting another car that, itself, suddenly braked in front of them. Spence was appropriately watching traffic at the time, was driving below the speed limit, and did not slam on the brakes or otherwise "excessively" brake to avoid hitting the car. These facts do not a

constitutional violation make. See, e.g., *Fluker v. County of Kankakee*, 945 F. Supp. 2d 972, 976–77, 988–989 (C.D. Ill. 2013) (McCuskey, J.), *affm'd* 741 F.3d 787 (7th Cir. 2013).

Moreover, Spence's options were either to brake as he did, or simply crash into the car in front of him. Choosing the safer of two options does not somehow violate the constitution. Even if Spence had driven negligently so at to put himself in that situation, negligence (and even *gross* negligence) does not violate the Eighth Amendment. See, e.g., *Hill v. Shobe*, 93 F.3d 418, 421–422 (7th Cir 1996) (dismissing Section 1983 claim which alleged a defendant-officer crashed into and killed decedent, where officer allegedly drove ran a red light at a high rate of speed, at night, and without lights; the officer's conduct sounded in negligence, and therefore was not actionable under Section 1983).

Third (and finally), it is worth noting that the medical evidence in this case — including the sole expert testimony — shows that Plaintiff did not suffer any acute injuries during his transport. (UMF #40).

Accordingly, Plaintiff was not subjected to an excessive risk to his safety, and the Defendants could not have disregarded this non-existent risk. Summary judgment is warranted.

## V.   CONCLUSION

For the reasons stated above, the Defendants respectfully request that summary judgment be entered in their favor.

Respectfully submitted,

MARCUS PAIGE AND JAMES SPENCE, Defendant

BY: s/Keith E. Fruehling
Keith E. Fruehling, ARDC #: 6216098
Bryan J. Vayr, ARDC #6327729
HEYL, ROYSTER, VOELKER & ALLEN
Suite 505, 301 N. Neil Street
Champaign, IL 61820

**TYPE-VOLUME CERTIFICATION**

      Per this Court's Local Rules, the undersigned counsel certifies that the relevant portions of this Motion consist of fewer than 15 double-spaced pages and/or 5,000 words. Per counsel's word processing software, the "Argument" and "Conclusion" portions of this Motion comprise 985 words.

/s/Bryan Vayr
Counsel for Defendants

**PROOF OF SERVICE**

I hereby certify that on October 12, 2022, I electronically filed the foregoing DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF, with the Clerk of the Court using the CM/ECF system.

I also hereby certify that I have mailed, by United States Postal Service, the foregoing to the following non-CM/ECF participant:

Mr. Faron Davenport, Inmate #K91501
Shawnee Correctional Center
Inmate Mail/Parcels
6665 State Route 146 East
Vienna, IL 62995

                                              s/Keith E. Fruehling
                                              Heyl, Royster, Voelker & Allen

42036508_2