E-FILED
Wednesday, 12 October, 2022  02:46:28 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT 5

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), Thomas D. Fowlkes, M.D. submits the following Expert Report on behalf of Correctional Officers (COs) Marcus Paige (CO Paige) and James Spence (CO Spence).

I am a correctional medicine physician with approximately 24 years of experience in delivering primary care in a correctional setting. I am board certified in both Emergency Medicine and Addiction Medicine. I am also a Certified Correctional Healthcare Professional-Physician (CCHP-P). I am well familiar with management in the correctional setting of the disease processes which are at issue in this case. My current curriculum vitae (CV) is attached with a more complete list of my qualifications.

    **(i)    A complete statement of all opinions the witness will express and the basis and reasons for them.**
**Scope of report:**

(I.) The appropriateness of the actions taken by the correctional officers in transporting Mr. Faron Davenport (Mr. Davenport) from the Champaign County Jail (CCJ) to the Illinois Department of Corrections (IDOC) on September 30, 2021 and

(II.) Whether the incident described is consistent with and causative of Mr. Davenport's subsequent complaints and

(III.) How Mr. Davenport's past medical history and subsequent findings influence those opinions.

My opinions are limited to those which I can offer to a reasonable degree of medical probability.

**Factual Summary:**

1.    Mr. Davenport is a 55 year-old male (date of birth=<span style="color:red">Redacted</span>1966) with a past medical history significant for:

    a.    Asthma.

    b.    He reported having been in a motor vehicle accident (MVA) in the 1980s leading to a fractured left leg and hospitalization at the Elvis Presley Trauma Center in Memphis, TN.

    c.    He reported "nerve damage on left side." (IDOC0012)

    d.    Marijuana use.

2.    Mr. Davenport had been incarcerated at the CCJ for a period of time. On 9/30/2021 he was transported to the IDOC Northern Reception and Classification Center (NRC) at Stateville in a Champaign County transport van. In the pleadings in this matter, Mr. Davenport describes an incident which is the basis of his claims. Mr. Davenport's own description of this incident is significant for:

    a.    The van was not equipped with seat belts but there were partitions separating at least some of the inmates.

    b.    A vehicle pulled into the lane in front of the transport van causing the driver to apply the brakes.

c.      Mr. Davenport did not describe that there was any contact with any other vehicle or object.

d.      Mr. Davenport did not describe an incident of such severity that the transport had to be interrupted or law enforcement had to be called for a report.

e.      Mr. Davenport described that with the hard braking he was "thrown into the very back of the van."

f.      In his complaint, he reported injury to "my neck & my right shoulder & my ribs on my right side and my lower back and my head."

3.      Upon arrival at NRC, Mr. Davenport was seen that same day by a provider for a reception history and physical which was significant for:

a.      Mr. Davenport reported his past history as above in # 1. a., b., and c.

b.      He reported not being on medication at the time of transfer and not having any medication allergies.

c.      He reported that he "was using cane" (IDOC0011) and that he was "on low bunk permit." (IDOC0012)

d.      His vital signs were normal. He was alert and responsive and his breathing was normal.

e.      Peak flow tests were done and were normal, indicating a normal ability to breath in deeply and exhale forcefully.

3

f.      On exam, Mr. Davenport's head, face, scalp, ears, eyes, chest, lung and abdominal exams were normal.

g.      His spine and musculoskeletal exam showed generalized pain with active range of motion to his right side. His strength in his left arm was greater than his right arm and was greater in his right leg than his left leg.

h.      He had multiple scars.

i.      His neurologic exam was normal. He was alert and oriented and in no acute distress.

4.      His assessment was "generalized body pain." (IDOC0010) He was cleared for general population and was provided Tylenol three times a day as needed for a month. He was provided a low bunk and low gallery permit.

5.      According to his Statement of Facts (ECF #045), Mr. Davenport filled out a grievance on 10/3/2021 which was received on 10/8/2021 and addressed his medical complaints, the incident in the vehicle and his medical care since arriving at Stateville.

6.      On 10/23/2021 Mr. Davenport was seen in nursing sick call for "neck pain, back pain, rib pain, status post injury." He was "ambulatory" but with "unsteady, bending walk" which he reported was due to pain. His vital signs were normal. He reported the Tylenol he had been provided was not helping. He was referred to be seen by the provider. (IDOC0017)

4

7.      Three days later, on 10/26/2021, Mr. Davenport was seen by a provider at

NRC. This visit was significant for: (IDOC0019-0020)

a.      He reported "multiple injuries to neck, head, back, chest and

shoulder" causing "severe pain" and "discomfort with movement."

b.      He also complained of an itchy scalp and he had "bumps/papules

scattered to head" with "swollen right lateral aspect of neck."

c.      He had tenderness all along his back, asymmetric neck muscles and

limited range of motion of his back.

d.      His diagnoses this day were "traumatic injury to back, right ribs, right

shoulder and neck with pain." He was also diagnosed with folliculitis.

e.      Mr. Davenport was prescribed a steroid taper, a muscle relaxant

(Robaxin), a non-steroidal anti-inflammatory drug (NSAID), and a pain medication

(tramadol) for his pain complaints.

f.      X-rays of his chest/right ribs, right shoulder, neck and lumbar spine

were ordered.

g.      He was prescribed an antibiotic and a medicated shampoo for his

folliculitis.

h.      He was given a pass for a crutch and a slow walk permit. He was to be

placed in a single-man or handicapped (ADA) cell.

i.      He was to follow-up in one week.

5

8.      X-rays done on 10/26/2021 showed advanced, diffuse degenerative disease in the cervical spine. The chest/rib x-rays were negative except for a dilated atherosclerotic ascending aorta. The other x-rays were negative. (IDOC0167)

9.      Mr. Davenport was seen again by the provider on 11/1/2021. On this day, Mr. Davenport was given his x-ray results. He was still complaining of severe pain. He was walking with the crutch with an "unsteady gait, slow and with difficulty." He was diagnosed with degenerative disease of the cervical spine. The current treatment regimen was continued and nortriptyline was added each night for three months to aid with the pain and for sleep.

10.     On 11/3/2021 Mr. Davenport was transferred within the IDOC from the NRC to Vienna Correctional Center (Vienna). On the Transfer Summary, his generalized body pain and the MVA from 1990 were noted along with the medications he was prescribed at NRC. Upon arrival he was noted to have no deformities, a normal physical appearance and normal vital signs. He was complaining of back and neck pain.

11.     The next day Mr. Davenport saw a provider at Vienna to review and discuss his medications. He was "not forthcoming with information regarding reasons for medication." He continued "to attempt to over talk this provider." His Robaxin prescription was discontinued. (IDOC0022)

12.    On 11/15/2021 Mr. Davenport requested a single cell and a slow walk pass. A nurse and a provider went to Mr. Davenport's cell for the visit because he was still on quarantine for COVID. They observed him "ambulating in hallway prior to visit without difficulty. Gait normal." He was not provided any special permits. (IDOC0027)

13.    On 11/17/2021 Mr. Davenport was seen in nursing sick call wherein he was complaining of back and neck pain and "alleging while being transported to NRC, driver of van braked heavily. Got throwed (sic) into back of van." He reported he "sure could use a cane." His pain was 12 out of 10. The "only thing that helped was tramadol and Robaxin." The nurse noted that he had ibuprofen ordered and was prescribed nortriptyline but he was "not taking it." "Patient uncooperative" with range of motion. He was referred to see a provider. (IDOC0029-0030)

14.    Mr. Davenport began to complain about not wanting to come to pill line for his nortriptyline and he wanted to refuse it. After he was made to come to mandatory pill line on the evening of 11/19/2021 to sign a refusal form, Mr. Davenport "fell out." He also complained about "the mean lady came to unit 2 and took away my meds." "I also had a cane or a crutch and she took it away." His vitals signs and blood sugar were normal. The nurses spoke with a physician, allowed him to refuse the nortriptyline, and referred him to provider sick call. (IDOC0035)

15.     On 11/22/2021 Mr. Davenport refused to be seen by a nurse practitioner for provider sick call and insisted on seeing the physician. The physician saw Mr. Davenport and documented: "Reports that no need to take off his clothes for an exam since there is no current bruising. Repeated request to be sent out for evaluation. Reports that no one is providing him medical assistance. He has no faith in our medical decisions. Continued to argue about the incompetence of the medical (sic) to the point I could not explain to him that the staff is here to assist with medical needs." The physician noted the normal x-rays and his normal gait. "Stated we are doing nothing for him." After further attempts to explain about the medical care he was receiving, "he was not satisfied. Continued to argue and then alluded to talking to his attorney and left the exam room." (IDOC0038-0040)

16.     Shortly thereafter, when Mr. Davenport attempted to get his medical records he was "very rude, mocking healthcare, interrupted me frequently saying 'I don't want to hear what you have to say.'" (IDOC0044)

17.     On 12/31/2021 at approximately noon Mr. Davenport did not want to walk to lunch. He was brought to the health care unit in a wheelchair for evaluation. "Patient immediately became uncooperative and argumentative." When the nurse explained she was trying to help him, Mr. Davenport "stated you ain't (sic) trying to help me and I have a paper trail proving that." (IDOC0046) He then "stood up out of wheelchair without assistance and walked out of room." (IDOC0047)

8

Security staff reported to the health care unit that Mr. Davenport had a video visit that morning and wanted his tray brought to him so that he would not miss his visit.

18.     At approximately 4:30 p.m. that same afternoon Mr. Davenport reported that he fell backwards while going up a set of stairs and struck his head. He was complaining of neck and low back pain after the fall. A medical emergency was called. Responding health care personnel placed Mr. Davenport in a cervical collar and transported him to the health care unit on a backboard. He was "noncooperative with assessment." (IDOC0050)

19.     Over the next week or so, Mr. Davenport was argumentative with staff and refused to be seen. X-rays were ordered and the nursing staff spent a good deal of time attempting to calm Mr. Davenport and have him cooperate with the health care staff. On 1/7/2022 he refused to go for the ordered x-rays. He was referred to a physician for his multiple complaints.

20.     On 1/10/2022 Mr. Davenport refused to see the physician as scheduled. According to the physician's documentation, "he was disruptive in the waiting area so he was taken to segregation." The physician confirmed that he was refusing to see a provider. (IDOC0062)

21.     Over the next month Mr. Davenport continued to refuse to be seen by the health care staff at Vienna and remained argumentative. On 2/14/2022 a multi-

disciplinary team was convened to meet with Mr. Davenport and address his multiple complaints. Mr. Davenport "became loud" and "referred to the team as 'evil and diabolical.'" He refused to meet with the team and left the room. (IDOC0076)

22.     Over the next month Mr. Davenport continued to refuse to cooperate with the health care staff and his behavior became "threatening and aggressive." (IDOC0085)

23.     On 3/25/2022 Mr. Davenport was transferred to Shawnee Correctional Center. By now he claimed allergies to Haldol, ibuprofen and sulfa drugs. His past medical history was noted; however, the incident in September 2021 was now being described as a "motor vehicle accident (MVA)". Upon intake he requested a "cane for balance" and "an MRI (magnetic resonance imaging)." (IDOC0090)

24.     Mr. Davenport was seen by a physician at Shawnee who provided him with low bunk, low gallery, and slow walk passes along with a cane. The physician also ordered lumbar x-rays for his back pain.

25.     The x-rays done on 4/5/2022 showed "no acute abnormalities." (IDOC0164) When Mr. Davenport met with the physician on 4/14/2022 for the results, "patient was argumentative and not believing any word I say." Mr. Davenport requested to see a different provider. (IDOC0097)

26.     On 4/20/2022 Mr. Davenport saw another provider who noted the "MVA" in September 2021 and that he was "now walking with cane for stability" and that Mr. Davenport was "unable to take NSAIDs due to allergy." (IDOC0099) The provider referred Mr. Davenport for an MRI.

27.     Mr. Davenport continued to refuse to take the Cymbalta which had been prescribed for his chronic pain. He was referred to the chronic pain clinic.

28.     Mr. Davenport had the MRIs of his spine on 4/28/2022. On 5/3/2022 Mr. Davenport met with a physician for the results. The physician documented this about the encounter: "Tried to explain results of MRI-cervical, thoracic and lumbar spine- showing multi-level degenerative changes of the spine. Patient remarked he insisted that he needs to be treated for the injuries he suffered according to him from when he was thrown back of car." The physician "submitted request to collegial review to refer to orthopedic." (IDOC0105)

29.      On 5/15/2022 Mr. Davenport briefly declared a hunger strike.

**Opinions:** The following are my opinions to a reasonable degree of medical probability on each of these areas based upon my training, experience, and a review of the records in this case:

(I.)     The actions taken by the correctional officers in transporting Mr. Davenport from the CCJ to the IDOC on 9/30/2021 were reasonable, appropriate and well within the acceptable standard of care. Specifically:

1.      Aside from Mr. Davenport's delayed complaints, there is no evidence within the records I have reviewed that a significant mechanism of injury occurred which should have caused the delayed and prolonged symptoms of which Mr. Davenport complained. There was no contact with another vehicle or object. There were no incident reports filed by the correctional officers. There were no police reports. There were no complaints of injuries by the other passengers in the van.

2.      Significantly, Mr. Davenport did not complain of an incident or of any injuries upon his arrival to NRC on 9/30/2021. He had normal vital signs, normal breathing, no evidence of any injuries and a normal neurologic exam. The receiving medical providers made no documentation of any complaint of an incident or any acute injuries that Mr. Davenport was suffering from.

3.      Mr. Davenport complained that the transport van was not equipped with seat belts. I do not know if this is the case or not. However, there is certainly no evidence in the records I have reviewed that these correctional officer defendants were responsible for the design features of the transport van or somehow disabled or removed the seat belts.

4.      There is also no evidence in the records I have reviewed that the correctional officers allowed Mr. Davenport to be transported in a manner which was contrary to normal practice or in an unsafe manner.

5.      Mr. Davenport himself described a vehicle pulling in front of the transport vehicle causing the driver to brake to avoid a collision. The fact that a collision was avoided indicates that the driver was operating the vehicle in an appropriate manner and does not indicate operation in a negligent manner.

6.      There is certainly no indication in the record that these correctional officers, or anyone else for that matter, intentionally failed to provide care to Mr. Davenport or deliberately disregarded a known serious medical condition.

(II.)   Mr. Davenport's subsequent complaints are not consistent with being caused by the incident described for a number of reasons. Specifically:

1.      It was only later, obviously after the transporting officers had already departed the facility, that Mr. Davenport complained of any injury.

2.      Mr. Davenport first complained of injury in an administrative grievance rather than in a request for medical care.

3.      As an emergency physician I have significant training and experience in the mechanisms of injury in motor vehicle crashes and other injuries. The mechanism of injury described by Mr. Davenport is not consistent with what he describes occurred. When a deceleration force is applied to a moving vehicle (such as with hard braking), unrestrained objects and persons in the vehicle are pushed forward rather than "thrown into the very back of the van."

4.      There is no evidence in the records I have reviewed that Mr. Davenport ever developed any visible injuries related to this incident or any evidence of direct trauma.

(III.)  Mr. Davenport's past medical history and subsequent findings influence my opinions as follows:

1.      Mr. Davenport did have a remote history of a motor vehicle accident causing significant injury. Mr. Davenport already had left sided weakness and nerve damage after this previous injury.

2.      Although we do not have prior medical records to confirm this, Mr. Davenport reported upon intake to NRC on 9/30/2021 that he "was using cane" at his prior facility along with having a low bunk permit. Thus, Mr. Davenport was already having significant problems with walking and his mobility even prior to this reported incident.

3.      X-rays taken less than a month after this incident showed advanced, diffuse degenerative disease in his neck. There were no acute fractures and no new injuries identified. These findings are chronic findings. They represent arthritis of the spine which had developed over a long period of time, either as a normal part of the aging process or in response to remote injuries.

4.      MRI exams done several months later confirm that these are chronic degenerative changes and do not show any acute or sub-acute injury.

14

5.     Thus, Mr. Davenport does have some chronic abnormalities of his spine and he may well have pain and difficulty with movement of his spine as a result. He may even require specialty referral or some type of operative or other therapeutic procedure in the future. Nevertheless, these chronic abnormalities are the result of arthritis of his spine and there are no acute injuries identified which can be causally tied to his reported incident in September 2021.

6.     Mr. Davenport clearly has behavioral and/or mental health conditions which interfere with his ability to comprehend and cooperate with the providers who are trying to help him. This has made the management of his complaints much more difficult. This has been a consistent feature of Mr. Davenport's presentation at IDOC across multiple different providers and facilities. There is certainly no indication in the records I have reviewed that the actions of the correctional officer defendants are in any way related to his subsequent behavior.

These opinions are expressed as requested to a reasonable degree of medical probability.  I reserve the right to review additional materials as noted or as they become available and to amend or modify these opinions based on the review of additional materials.

### (ii)     The facts or data considered by the witness in forming these opinions.

To assist me in forming these medical opinions I have reviewed records in this case, including:

1.      The Complaint

2.      Shawnee Correctional Center Medical File (226 pages)

3.      Various Pleadings in this matter

4.      Plaintiff's Statement of Facts

  **(iii)   Any exhibits that will be used to summarize or support these opinions.**

None at this time other than the records set forth above.

  **(iv)    The witness's qualifications, including a list of all publications authored in the previous 10 years.**

See Appendix A for my current CV.

  **(v)     A list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition.**

See Appendix B for my case list from the last four years.

  **(vi)    A statement of the compensation to be paid for the study and testimony in the case.**

See Appendix C for my fee schedule.



X /s/ Thomas D. Fowlkes, M.D.
Thomas D. Fowlkes, M.D.



# Thomas D. Fowlkes, M.D.
Redacted

Redacted
Cell: Redacted
Redacted                    .com

## SUMMARY OF QUALIFICATIONS

Seasoned Physician Board Certified in both Emergency Medicine and Addiction Medicine and with more than 24 years of practice in Correctional Medicine.

Accomplished expert witness with more than 10 years of experience at both deposition and trial in state and federal courts and before state regulatory bodies on behalf of plaintiffs/prosecutors/state boards as well as defendants in these matters.

Areas of expertise include:    Correctional Healthcare
Deaths in Custody
Drug Abuse and Effects of Addiction
Drug testing interpretation and effects of substances
Urgent Care & Emergency Medicine

## CERTIFICATIONS

Board certified emergency physician (American Board of Emergency Medicine) - July 1993 - Dec. 2023

Board certified in Addiction Medicine (American Board of Preventative Medicine) - Jan. 2021 - Dec. 2030 (previous board certification was through American Board of Addiction Medicine 2010-2020)

Certified Correctional Healthcare Professional - Physician (CCHP-P) - July 2017 - June 2023

Certified Medical Review Officer for Drug/Alcohol Testing (MROCC) - Dec. 2012 - Dec. 2022

Unrestricted license to practice medicine in Mississippi since 1993

## PROFESSIONAL EXPERIENCE

1998-Present    Medical Director at Lafayette County (MS) Detention Center, a 160-bed jail facility holding local and federal (US Marshal) detainees. From 1998-2015, as an independent contractor responsible for provision of all medical, nursing, medication and lab services at the facility. Responsible for all these health services as an employee of Lafayette County, MS since 2015. Also responsible for implementation of revised EMS system.

2011- Present    Medical consultant for Third Circuit Judicial District Drug Court, a felony drug court in Oxford, MS under the direction of Administrator Brandon Vance and Judges Andrew Howorth & Gray Tollison

2007- Present    Prisoner Advocate Member, Institutional Review Board, Division of Research Integrity & Compliance, University of Mississippi

2018- Present    Co-owner and Physician at Right Track Medical Group, an outpatient provider of mental health services with 9 locations in Mississippi.

# Thomas D. Fowlkes, M.D.

## PROFESSIONAL EXPERIENCE (cont.)

| | |
|---|---|
| 1992-Present | Sole shareholder of Thomas D. Fowlkes, M.D., P.A. In the past I have contracted to provide emergency physician services to acute care facilities and emergency departments. Contract consultation/training services. Operated correctional medical facility at Lafayette County, MS Detention Center and conducted court ordered mental health, substance abuse & competency evaluations for Chancery Court in Lafayette County. Expert witness practice. |
| 1999-Present | Served as Deputy Medical Examiner Investigator for Lafayette County MS from 1999-2008 after completing 40-hour Death Investigation Certification Class. Since 2008 I have served as the medical consultant to the Lafayette County Coroner. |
| 2011-Present | Medical Director for A&D Services for Region IV Comm. Mental Health Center. 2011-2014 Detox Services at Tupelo CSU. 2017-Present at Corinth (Part-time) |
| 2019- 2020 | Medical Director of Express Care of Mississippi, LLC, an urgent care center in Cleveland, MS. |
| 2015- 2018 | Director of Professional & Medical Relations/Addiction Physician for American Addiction Centers, a nationwide provider of addiction services, at Oxford Treatment Center (formerly The Oxford Centre) |
| 2009- 2017 | Owner of a primary care clinic in Oxford, MS. Provider of primary and urgent care and an office-based addiction medicine practice. Until 2015, I practiced as a solo-practitioner then in partnership with a nurse practitioner as Oxford Family Clinic, LLC |
| 2011- 2015 | Co-owner and Chief Medical Officer of The Oxford Centre, Inc. a 76-bed CARF accredited detox, residential and outpatient substance abuse treatment facility. Sold to American Addiction Centers, a publicly traded company, in August 2015 |
| 2008-2011 | Addiction physician for detox and residential unit at Haven House, substance abuse treatment facility in Oxford, MS operated by Region II CMHC (Part-time) |
| 2005-2009 | Urgent care physician at Robinsonville (MS) Urgent Care Clinic and part-time physician at the Harrah's Employee Health & Wellness Center |
| 1998-2001 | Private practice of Emergency Medicine with Oxford Emergency Group, P.A. Provided emergency physician services to Baptist Memorial Hospital-North Miss. and Tri-Lakes Medical Center |
| 1997-1998 | Chief Medical Officer for Rural-Metro Corporation's Mid-South region. Rural-Metro provides ambulance services and fire protection throughout the United States and internationally. |
| 1995-1997 | Chief Medical Officer, secretary/treasurer and co-owner of Priority EMS, an ambulance provider in north Mississippi and metropolitan Memphis. Corporation merged with Rural-Metro Corp., a publicly traded company |
| 1992-1994 | Private practice of Emergency Medicine as shareholder and officer in Mid-South Emergency Physicians, P.C. Provided emergency department services for St. Joseph Hospital in Memphis, TN |

**Thomas D. Fowlkes, M.D.**

## EDUCATION

University of Pittsburgh Residency in Emergency Medicine
Pittsburgh, PA
1989-1992
Selected Chief Resident-1992
Served as medical command & on-scene physician for City of Pittsburgh, Dept. of Public Safety
Served as flight physician for STAT Med-evac helicopter program

University of Tennessee Medical School
Memphis, TN
M.D. 1989
Faculty Medal for Highest GPA
Alpha Omega Alpha Medical Honor Society

Rhodes College
Memphis, TN
B.S. in Psychobiology 1985
EMT with Shelby County Sheriff's Department, Division of Emergency Services
Psychiatric Technician at Memphis Mental Health Institute, an acute care psychiatric hospital

University of the South
Sewanee, TN
1980-1982
Community Volunteer Firefighter
Emergency Medical Technician (EMT-A)

## CURRENT MEMBERSHIPS/RECOGNITIONS

American College of Correctional Physicians
Fellow of the American Society of Addiction Medicine
Mississippi Society of Addiction Medicine
North Mississippi Medical Society/Mississippi State Medical Association/American Medical Association

## PUBLICATIONS

Fowlkes T. "Shortness of Breath." *Prehospital Systems and Medical Oversight.* 3rd ed. Ed. Kuehl A. Dubuque: Kendall/Hunt, 2002. 665-671. Print.

Fowlkes T. "Shortness of Breath." *Prehospital Medicine: The Art of On-Line Medical Command.* 1st ed. Eds. Paris, Roth, Verdile. Maryland Heights: Elsevier, 1996. 101-112. Print.

Fowlkes T, Verdile V. "Managing Gunshot Wounds." *The Journal of Emergency Services.* Vol. 23 (1990): 20-27. Print.

**Thomas D. Fowlkes, M.D.**

## PRESENTATIONS/TEACHING

"Issues in Drug Use for Workers' Compensation and Safety Sensitive Positions" at *Mississippi Bar Association's Workers' Compensation Section CLE Seminar*  February 7, 2020, Oxford, MS

Instructor for modules on "Health Care Issues," "Responding to Medical Emergencies," and "Responding to Special Needs Inmates" for the *Mississippi State Standards & Training- Corrections Officer Training Course,* September 18 & 19, 2019, at the DeSoto County Sheriff's Department in Hernando, MS

Videotape Presentation on "Reasonable Suspicion for Drug Testing" as part of *DOT Training for Supervisors,* Asmark Institute, Owensboro, KY, September 9, 2019

"Safe Prescribing of Sedative-Hypnotics" at *MPHP Prescribers' Summit: Controlled Substance Update*  June 22, 2018, Pearl, MS

"Safe Prescribing of Sedative-Hypnotics" at *MPHP Prescribers' Summit: Controlled Substance Update*  April 13, 2018, Gulfport, MS

"Safe Prescribing of Sedative-Hypnotics" at *MPHP Prescribers' Summit: Controlled Substance Update*  March 9, 2018, Oxford, MS

"Case Studies in Controlled Substance Prescribing" at *MPHP Prescribers' Summit: Controlled Substance Update*  October 13, 2017, Jackson, MS

"Case Studies in Controlled Substance Prescribing" at *Mississippi State Medical Association Foundation Prescribers' Summit*  March 31, 2017, Oxford, MS
"Update on the Prescription Drug Epidemic, Disturbing New Trends & Drug Testing Basics" at *Lafayette County Bar Association's Continuing Legal Education Conference* October 20, 2016, Oxford, MS

"Benzodiazepines: An Update" at *North Mississippi Medical Center's 13th Annual Outcomes Conference* August 25, 2016, Pickwick, TN

"Sedative Hypnotics: Avoiding Prescribing Pitfalls" at *Mississippi Professionals Health Program Prescribers' Summit*  June 24, 2016, Gulfport, MS

"Benzodiazepines: Update on Prescribing Trends" at *Mississippi State Medical Association Foundation Prescribers' Summit*  April 1, 2016, Oxford, MS

"An Introduction to the Prescription Drug Epidemic", Guest lecturer, *Addiction Counseling Course in the Graduate School of Counselor Education, University of MS*, February 22, 2016, Oxford, MS

"Benzodiazepines: An Update" at *37th Annual Caduceus Retreat & Conference of MS State Medical Association Foundation*, July 11, 2015, Louisville, MS

"An Introduction to the Prescription Drug Epidemic", Guest lecturer, *Addiction Counseling Course in the Graduate School of Counselor Education, University of MS*, February 10, 2015, Oxford, MS

"Prescription Drug Epidemic: Trouble at Home" at *Annual FACT Conference*, November 7, 2014, Tupelo, MS

"Mental Health in the Primary Care Setting" Keynote Address at *North MS Medical Center Outcomes Conference*, August 22, 2014, Pickwick, TN

**Thomas D. Fowlkes, M.D.**

## PRESENTATIONS/TEACHING (cont.)

"Managing Opiate Addicts with Painful Conditions" at *North MS Medical Center Outcomes Conference*, August 21, 2014, Pickwick, TN

"Buprenorphine: The Rest of the Story" at *24th Annual MS Association of Addiction Professionals Conference*, July 22, 2014, Oxford, MS

"Prescription Drug Epidemic: Trouble at Home" at *24th Annual MS Association of Addiction Professionals Conference*, July 22, 2014, Oxford, MS

"Controlled Substance Update" at *MS State Medical Association Foundation Prescribers' Summit*, March 28, 2014, Oxford, MS

"Benzodiazepines: The Good News & Bad News" at *Northwest MS Regional Medical Center Staff Conference*, Dec. 10, 2013, Clarksdale, MS

"Benzodiazepine Update" at *Southern Medical Association Rules, Regulations, & Risks of Prescribing Controlled Substances,* November 15, 2013, Hattiesburg, MS

"Controlled Substances Update: Benzodiazepines" at *Singing River Health System Prescribers' Summit*, November 1, 2013, Moss Point, MS

"Controlled Substances Update: Benzodiazepines" at *MS Professionals Health Program Prescribers Summit*, October 18, 2013, Jackson, MS

"Managing Controlled Substances in MS: Benzodiazepines" at *North MS Medical Center Best Outcomes Conference*, August 22, 2013, Pickwick, TN

Appendix B

Thomas D. Fowlkes, M.D.

**CASE LIST/EXPERT TESTIMONY LAST 4 YEARS (AS OF 7/1/2022)**

Benoit v. Lincoln County et al.
Cause # 12L6-CC00060
Circuit Court of Lincoln County, State of Missouri
2/5/2018 Deposition        8/15/2018 Trial

E/O Gracia v. Orange County et al.
Case # 6:17-cv-01423
US District Court, Middle District FL
11/13/2018 Deposition

Parkes v. Jasper County et al.
Cause # 18AO-CC00016
Circuit Court of Jasper County, Missouri
11/28/2018 Deposition

E/O Leverett v. Correct Care Solutions et al.
Cause # 2017RCSC00672
State Court of Richmond County, Georgia
12/5/2018 Deposition

Ivey v. Audrain County et al.
Case # 2:17-cv-00082
US District Court, Eastern District MO
1/30/2019 Deposition

E/O Wesley v. Escambia County, et al.
Cause # 3:18-cv-1368
US District Court, Northern District FL
5/23/2019 Deposition

Harris (E/O Wood) v. Entergy of Arkansas Inc., et al.
Cause # cv-17-126-3
Circuit Court of Marion County, Arkansas Civil Division
5/21/2019 Deposition

Davis (E/O Stufflebean) et al v. Buchanan County, Missouri et al.
Case # 17-cv-06058
US District Court, Western District of Missouri
6/19/2019 Deposition

Appendix B

Thomas D. Fowlkes, M.D.


**CASE LIST/EXPERT TESTIMONY LAST 4 YEARS-CONTINUED**

E/O Legros v. Choctaw County, Oklahoma, et al.
Case # 18-cv-261
US District Court, Eastern Division of Oklahoma
7/26/2019 Deposition

E/O Clifton v. Champaign County, Illinois, et al.
Case # 1-2070
US District Court, Central District of Illinois
8/8/2019 Deposition

Marziale v. Correct Care Solutions, et al.
Case # 5:18-cv-86
US District Court, Eastern District of Arkansas
8/29/2019 Deposition

E/O Angerbauer v. LaSalle Correctional, LLC, et al.
Case # 4:16-cv-129
US District Court, Eastern District of Texas
10/22/2019 Deposition

State of Mississippi v. Jimmy Ray Hester
Cause # LK19-273MISC
Circuit Court of Lafayette County, Mississippi
10/11/2019 Hearing

Hancock v. Arnott, et al.
Cause # 6:18-cv 03170
United States District Court, Western District of Missouri
5/15/2020 Deposition

Love v. Franklin County, Kentucky et al.
Case # 3:18-cv-00023
United States District Court, Eastern District of Kentucky
5/19/2020 Deposition

E/O Burris v. Dodds, Logan County, et al.
Case # 2:19-cv-815
United States District Court, Southern District of Ohio
12/21/2020 Deposition

Appendix B

Thomas D. Fowlkes, M.D.

**CASE LIST/EXPERT TESTIMONY LAST 4 YEARS-CONTINUED**

Brinson v. Wexford Health Sources, et al.
Case # 17-cv-1659
United States District Court, Northern District of Illinois
2/23/2021 Deposition

Brenner v. MEnD Correctional Care, PLLC, et al.
Case # 18-cv-02383
United States District Court, District of Minnesota
4/15/2021 Deposition

E/O Thibault v. Centurion, et al.
Case # 5:20-cv-00032
United States District Court, Middle District of Florida
7/23/2021 Deposition

Bost (E/O Neal) v. Wexford Health Sources Inc., et al.
Case # 1:15-cv-03278
United States District Court, District of Maryland
7/29/2021 Deposition

Smith v. Cowlitz County, Washington, et al.
Case # 19-2-00918-06
Superior Court of Clark County, Washington
8/20/2021 Deposition

Israel v. USA, et al.
Case # 5:18-CT-3332
United States District Court, Eastern District of North Carolina
8/26/2021 Deposition

E/O Freiwald v. Fatoki, et al.
Case # 18-cv-896
United States District Court, Eastern District of Wisconsin
1/22/2020 Deposition      8/30/2021 Trial

E/O Warner v. Faulkner County, Arkansas, et al.
Case # 4:18-cv-468
US District Court, Eastern District of Arkansas
9/6/2019 Deposition      10/8/2021 Trial

Appendix B

Thomas D. Fowlkes, M.D.

**CASE LIST/EXPERT TESTIMONY LAST 4 YEARS-CONTINUED**

Atwood v. Days, et al.
Case # 2:20-cv-00623
United States District Court, District of Arizona
10/29/2021 Trial

Dyer v. Penobscot County Jail, et al.
Case # BANSC-CV-2020-36
Superior Court for the State of Maine
12/31/2021 Deposition

Addington v. Bayou Dorcheat Correctional Center, et al.
Case # 5:18-cv-01116
United States District Court, Western District of Louisiana
1/18/2022 Deposition

Jarvis v. Wellpath et al.
Case # 20-cv-2028
In the United States District Court District of Colorado
2/24/2022 Deposition

Brooks v. Centurion of Arizona LLC
Case # 4:21-cv-00265
United States District Court, District of Arizona
3/2/2022 Hearing

E/O Smith v. Jackson Co. Regional Jail, et al.
Case # 20-CI-00154
Commonwealth of Kentucky, Jackson Circuit Court Division I
3/14/2022 Deposition

E/O Widmayer v. Franklin Co, Ohio, et al.
Case # 2:20-cv-4660
United States District Court, Southern District of Ohio
3/22/2022 Deposition

Heth v Fatoki, et al.
Case # 19-cv-1096
United States District Court, Northern District of Illinois
6/3/2022 Deposition

Appendix B

Thomas D. Fowlkes, M.D.

**CASE LIST/EXPERT TESTIMONY LAST 4 YEARS-CONTINUED**

Moore v Nicholson, et al.
Case # 19-cv-3892
United States District Court, Northern District of Illinois
6/8/2022 Deposition



**Thomas D. Fowlkes, M.D.**

## SUMMARY OF QUALIFICATIONS

Seasoned Physician Board Certified in both Emergency Medicine and Addiction Medicine and with more than 23 years of practice in Correctional Medicine.

Accomplished expert witness with more than 10 years of experience at both deposition and trial in state and federal courts and before state regulatory bodies on behalf of plaintiffs/prosecutors/state boards as well as defendants in these matters.

Areas of expertise include:
Correctional Healthcare
Deaths in Custody
Drug Abuse and Effects of Addiction
Drug testing interpretation and effects of substances
Urgent Care & Emergency Medicine

## CERTIFICATIONS

Board certified emergency physician (American Board of Emergency Medicine) - July 1993 - Dec. 2023

Board certified in Addiction Medicine (American Board of Preventative Medicine) - Jan. 2021 - Dec. 2030 (previous board certification was through American Board of Addiction Medicine 2010-2020)

Certified Correctional Healthcare Professional - Physician (CCHP-P) - July 2017 - June 2022

Certified Medical Review Officer for Drug/Alcohol Testing (MROCC) - Dec. 2012 - Dec. 2022

Unrestricted license to practice medicine in Mississippi since 1993

## PROFESSIONAL EXPERIENCE

1998-Present — Medical Director at Lafayette County (MS) Detention Center, a 140-bed jail facility holding local and federal (US Marshal) detainees. From 1998-2015, as an independent contractor responsible for provision of all medical, nursing, medication and lab services at the facility. Responsible for all these health services as an employee of Lafayette County, MS since 2015

2011- Present — Medical consultant for Third Circuit Judicial District Drug Court, a felony drug court in Oxford, MS under the direction of Administrator Brandon Vance and Judges Andrew Howorth & Gray Tollison

2007- Present — Prisoner Advocate Member, Institutional Review Board, Division of Research Integrity & Compliance, University of Mississippi

2018- Present — Co-owner and Physician at Right Track Medical Group, an outpatient provider of mental health services in Mississippi & Alabama

# Thomas D. Fowlkes, M.D.

## PROFESSIONAL EXPERIENCE (cont.)

| | |
|---|---|
| 1992-Present | Sole shareholder of Thomas D. Fowlkes, M.D., P.A. Contractor of emergency physician services to acute care facilities and emergency medicine/EMS consultant. Operated correctional medical facility at Lafayette County, MS Detention Center and conducted court ordered mental health, substance abuse & competency evaluations for Chancery Court in Lafayette County. Expert witness & litigation support practice |
| 1999-Present | Served as Deputy Medical Examiner Investigator for Lafayette County MS from 1999-2008 after completing 40-hour Death Investigation Certification Class. Since 2008 I have served as the medical consultant to the Lafayette County Coroner. |
| 2011-Present | Medical Director for A&D Services for Region IV Comm. Mental Health Center. 2011-2014 Detox Services at Tupelo CSU. 2017-Present at Corinth (Part-time) |
| 2019- 2020 | Medical Director of Express Care of Mississippi, LLC, an urgent care center in Cleveland, MS. |
| 2015- 2018 | Director of Professional & Medical Relations/Addiction Physician for American Addiction Centers, a nationwide provider of addiction services, at Oxford Treatment Center (formerly The Oxford Centre) |
| 2009- 2017 | Owner of a primary care clinic in Oxford, MS. Provider of primary and urgent care and an office-based addiction medicine practice. Until 2015, I practiced as a solo-practitioner then in partnership with a nurse practitioner as Oxford Family Clinic, LLC |
| 2011- 2015 | Co-owner and Chief Medical Officer of The Oxford Centre, Inc. a 76-bed CARF accredited detox, residential and outpatient substance abuse treatment facility. Sold to American Addiction Centers, a publicly traded company, in August 2015 |
| 2008-2011 | Addiction physician for detox and residential unit at Haven House, substance abuse treatment facility in Oxford, MS operated by Region II CMHC (Part-time) |
| 2005-2009 | Urgent care physician at Robinsonville (MS) Urgent Care Clinic and part-time physician at the Harrah's Employee Health & Wellness Center |
| 1998-2001 | Private practice of Emergency Medicine with Oxford Emergency Group, P.A. Provided emergency physician services to Baptist Memorial Hospital-North Miss. and Tri-Lakes Medical Center |
| 1997-1998 | Chief Medical Officer for Rural-Metro Corporation's Mid-South region. Rural-Metro provides ambulance services and fire protection throughout the United States and internationally. |
| 1995-1997 | Chief Medical Officer, secretary/treasurer and co-owner of Priority EMS, an ambulance provider in north Mississippi and metropolitan Memphis. Corporation merged with Rural-Metro Corp., a publicly traded company |
| 1992-1994 | Private practice of Emergency Medicine as shareholder and officer in Mid-South Emergency Physicians, P.C. Provided emergency department services for St. Joseph Hospital in Memphis, TN |

**Thomas D. Fowlkes, M.D.**

## EDUCATION

University of Pittsburgh Residency in Emergency Medicine
Pittsburgh, PA
1989-1992
Selected Chief Resident-1992
Served as medical command & on-scene physician for City of Pittsburgh, Dept. of Public Safety
Served as flight physician for STAT Med-evac helicopter program

University of Tennessee Medical School
Memphis, TN
M.D. 1989
Faculty Medal for Highest GPA
Alpha Omega Alpha Medical Honor Society

Rhodes College
Memphis, TN
B.S. in Psychobiology 1985
EMT with Shelby County Sheriff's Department, Division of Emergency Services
Psychiatric Technician at Memphis Mental Health Institute, an acute care psychiatric hospital

University of the South
Sewanee, TN
1980-1982
Community Volunteer Firefighter
Emergency Medical Technician (EMT-A)

## CURRENT MEMBERSHIPS/RECOGNITIONS

American College of Correctional Physicians
Fellow of the American Society of Addiction Medicine
Mississippi Society of Addiction Medicine
North Mississippi Medical Society/Mississippi State Medical Association/American Medical Association

## PUBLICATIONS

Fowlkes T. "Shortness of Breath." *Prehospital Systems and Medical Oversight.* 3rd ed. Ed. Kuehl A. Dubuque: Kendall/Hunt, 2002. 665-671. Print.

Fowlkes T. "Shortness of Breath." *Prehospital Medicine: The Art of On-Line Medical Command.* 1st ed. Eds. Paris, Roth, Verdile. Maryland Heights: Elsevier, 1996. 101-112. Print.

Fowlkes T, Verdile V. "Managing Gunshot Wounds." *The Journal of Emergency Services.* Vol. 23 (1990): 20-27. Print.

**Thomas D. Fowlkes, M.D.**

## PRESENTATIONS/TEACHING

"Issues in Drug Use for Workers' Compensation and Safety Sensitive Positions" at *Mississippi Bar Association's Workers' Compensation Section CLE Seminar* February 7, 2020, Oxford, MS

Instructor for modules on "Health Care Issues," "Responding to Medical Emergencies," and "Responding to Special Needs Inmates" for the *Mississippi State Standards & Training- Corrections Officer Training Course,* September 18 & 19, 2019, at the DeSoto County Sheriff's Department in Hernando, MS

Videotape Presentation on "Reasonable Suspicion for Drug Testing" as part of *DOT Training for Supervisors,* Asmark Institute, Owensboro, KY, September 9, 2019

"Safe Prescribing of Sedative-Hypnotics" at *MPHP Prescribers' Summit: Controlled Substance Update* June 22, 2018, Pearl, MS

"Safe Prescribing of Sedative-Hypnotics" at *MPHP Prescribers' Summit: Controlled Substance Update* April 13, 2018, Gulfport, MS

"Safe Prescribing of Sedative-Hypnotics" at *MPHP Prescribers' Summit: Controlled Substance Update* March 9, 2018, Oxford, MS

"Case Studies in Controlled Substance Prescribing" at *MPHP Prescribers' Summit: Controlled Substance Update* October 13, 2017, Jackson, MS

"Case Studies in Controlled Substance Prescribing" at *Mississippi State Medical Association Foundation Prescribers' Summit* March 31, 2017, Oxford, MS
"Update on the Prescription Drug Epidemic, Disturbing New Trends & Drug Testing Basics" at *Lafayette County Bar Association's Continuing Legal Education Conference* October 20, 2016, Oxford, MS

"Benzodiazepines: An Update" at *North Mississippi Medical Center's 13th Annual Outcomes Conference* August 25, 2016, Pickwick, TN

"Sedative Hypnotics: Avoiding Prescribing Pitfalls" at *Mississippi Professionals Health Program Prescribers' Summit* June 24, 2016, Gulfport, MS

"Benzodiazepines: Update on Prescribing Trends" at *Mississippi State Medical Association Foundation Prescribers' Summit* April 1, 2016, Oxford, MS

"An Introduction to the Prescription Drug Epidemic", Guest lecturer, *Addiction Counseling Course in the Graduate School of Counselor Education, University of MS*, February 22, 2016, Oxford, MS

"Benzodiazepines: An Update" at *37th Annual Caduceus Retreat & Conference of MS State Medical Association Foundation*, July 11, 2015, Louisville, MS

"An Introduction to the Prescription Drug Epidemic", Guest lecturer, *Addiction Counseling Course in the Graduate School of Counselor Education, University of MS*, February 10, 2015, Oxford, MS

"Prescription Drug Epidemic: Trouble at Home" at *Annual FACT Conference*, November 7, 2014, Tupelo, MS

"Mental Health in the Primary Care Setting" Keynote Address at *North MS Medical Center Outcomes Conference*, August 22, 2014, Pickwick, TN

**Thomas D. Fowlkes, M.D.**

## PRESENTATIONS/TEACHING (cont.)

"Managing Opiate Addicts with Painful Conditions" at *North MS Medical Center Outcomes Conference*, August 21, 2014, Pickwick, TN

"Buprenorphine: The Rest of the Story" at *24th Annual MS Association of Addiction Professionals Conference*, July 22, 2014, Oxford, MS

"Prescription Drug Epidemic: Trouble at Home" at *24th Annual MS Association of Addiction Professionals Conference*, July 22, 2014, Oxford, MS

"Controlled Substance Update" at *MS State Medical Association Foundation Prescribers' Summit*, March 28, 2014, Oxford, MS

"Benzodiazepines: The Good News & Bad News" at *Northwest MS Regional Medical Center Staff Conference*, Dec. 10, 2013, Clarksdale, MS

"Benzodiazepine Update" at *Southern Medical Association Rules, Regulations, & Risks of Prescribing Controlled Substances,* November 15, 2013, Hattiesburg, MS

"Controlled Substances Update: Benzodiazepines" at *Singing River Health System Prescribers' Summit*, November 1, 2013, Moss Point, MS

"Controlled Substances Update: Benzodiazepines" at *MS Professionals Health Program Prescribers Summit*, October 18, 2013, Jackson, MS

"Managing Controlled Substances in MS: Benzodiazepines" at *North MS Medical Center Best Outcomes Conference*, August 22, 2013, Pickwick, TN